UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DAVID PAUL,                         Case No. 13-14911

            Plaintiff,                  Laurie J. Michelson
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Michael Hluchaniuk
                                            United States Magistrate Judge
            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 16)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On November 27, 2013, plaintiff Michael David Paul filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Laurie J. Michelson referred this matter to the

undersigned for the purpose of reviewing the Commissioner's decision denying

plaintiff's claims for disability insurance benefits and supplemental security

income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for

summary judgment.  (Dkt. 12, 16).  Plaintiff also filed a reply brief in support of

his motion.  (Dkt. 17).

**B.      Administrative Proceedings**

Plaintiff filed the instant claims for disability and disability insurance benefits (DIB) and supplemental security income (SSI) on June 27, 2011, alleging that he became disabled beginning April 30, 2011.  (Dkt. 8-5, Pg ID 213-16, 220-24).  The claims were initially disapproved by the Commissioner on August 30, 2011.  (Dkt. 8-3, Pg ID 113-14).  Plaintiff requested a hearing and on June 21, 2012, plaintiff appeared, with counsel, before Administrative Law Judge (ALJ) Michael Wilenkin, who considered the case de novo.  (Dkt. 8-2, Pg ID 64-87).  In a decision dated August 30, 2012, the ALJ found that plaintiff was not disabled. (Dkt. 8-2, Pg ID 115-25).  Plaintiff requested a review of this decision, and on April 16, 2013, the Appeals Council granted plaintiff's request for review and remanded the case back to the ALJ to further evaluate plaintiff's reported mental impairment, congenital deformity of the right hand, and pulmonary limitations and, if warranted, to obtain supplemental evidence from a vocational expert.  (Dkt. 8-3, Pg ID 126-32).  The remand hearing took place on June 18, 2013, again before ALJ Wilenkin.  (Dkt. 8-2, Pg ID 45-63).  In a decision dated July 10, 2013, the ALJ again issued an unfavorable decision.  (Dkt. 8-2, Pg ID 28-40).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on September 26, 2013, denied plaintiff's request for review.  (Dkt. 8-2, Pg ID 23-25); *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff, born in 1960, was 50 years of age on the alleged disability onset date and 52 years old on the date of the second hearing before the ALJ.  (Dkt. 8-2, Pg ID 37, 39).  Plaintiff had past relevant work experience as an intake evaluator and a social worker.  (Dkt. 8-2, Pg ID 39).  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since April 30, 2011, the alleged onset date.  (Dkt. 8-2, Pg ID 33).  At step two, the ALJ found that plaintiff's history of congenital valvular heart disease with aortic valve replacement and mitral valve repair, atrial fibrillation, and chronic systolic heart failure were "severe" within the meaning of the second sequential step, and that plaintiff's congenital hand deformity, history of stroke, and major depressive disorder were not severe, and that his reported shortness of breath was not related to a medically determinable respiratory impairment.  (Dkt. 8-2, Pg ID 33-36).  At step three, the ALJ found no

evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 8-2, Pg ID 36).

The ALJ determined that plaintiff has the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he should avoid exposure to sharp (or other) objects that may cut or cause injury (due to his blood thinner therapy)." (Dkt. 8-2, Pg ID 36-39). At step four, the ALJ found that plaintiff was unable to perform his past relevant work, because the exertional demands of those positions exceeded plaintiff's RFC. (Dkt. 8-2, Pg ID 39). At step five, the ALJ denied plaintiff benefits because he could perform a significant number of jobs available in the national economy. (Dkt. 8-2, Pg ID 39-40).

### B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ erred because he failed to properly analyze plaintiff's ability to perform other work at Step Five of the sequential evaluation, as he did not take testimony from the vocational expert as outlined in the remand hearing order. According to plaintiff, in the Appeals Council order regarding the remanded hearing, they indicated that the ALJ should, "obtain if warranted by the expanded record, supplemental evidence from a vocational expert[.]" (Tr. 109). Plaintiff asserts that the hearing was conducted and at its conclusion, plaintiff's counsel inquired about the testimony of the vocational expert. The ALJ responded

4

that it was not going to be taken.  (Tr. 41).  Plaintiff contends that the ALJ should

have allowed the testimony of the vocational expert, per the Appeals Council

Order.  Plaintiff continues that even though the Appeals Council indicated such

additional testimony was optional, the failure to obtain additional testimony was

prejudicial against the plaintiff, because it did not allow him to examine the expert

or hear if the expert's testimony would have provided a different assessment than

that of the ALJ's.

    According to plaintiff, the ALJ here relies on the testimony of the

vocational expert from the first hearing in his second decision.  (Tr. 39-40).

Plaintiff argues, however, that based on the updated evidence that was submitted

into the file and plaintiff's testimony, the ALJ should have obtained updated

testimony from a vocational expert.  Plaintiff asserts that the testimony of the

vocational expert is vital to his case and should have taken place in this hearing.

Plaintiff argues that the burden is on the Commissioner at Step Five of the

sequential evaluation, and the Commissioner failed to meet his burden by not

allowing the testimony of the vocational expert.  Instead, at Step Five, the ALJ

determined that plaintiff could not perform his past relevant work, but could

transfer his skills to perform other jobs within the national economy.  (Tr. 17-18).

Pursuant to case law, it is the duty of the Administrative Law Judge to fully

develop the record.  *Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048

5

(6th Cir. 1983). Plaintiff contends that at Step Five, the ALJ should have followed the remand order in its entirety, and completed the development of the record, and that his failure to fully develop the record resulted in plaintiff not obtaining a full and fair hearing.

Plaintiff asserts that this issue is addressed in *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999). According to plaintiff, the ALJ in *Tackett* failed to obtain vocational expert testimony, and relied on the medical expert and the grids established by the Social Security Administration. The court indicated, "[a]t step five in the instant case, the ALJ concluded that Tackett's limitations were adequately covered by the grids. Consequently, the ALJ did not call a vocational expert to establish the availability of suitable jobs in the national economy. This was error. Because Tackett suffers from non-exertional limitations not contemplated by the grids, the ALJ was required at step five to call upon a vocational expert to establish whether Tackett was disabled." *Id.* at 1102.

Plaintiff argues that here, there was evidence submitted regarding his mental impairment of depression, which is a non-exertional limitation, and that this evidence should have been considered and presented to a vocational expert through hypothetical scenarios, as noted by the Court in *Tackett.* Failure by the ALJ to do so, plaintiff argues, resulted in harmful error, which can only be corrected through a reversal or remand. Plaintiff contends that although *Tackett*

6

was decided in another circuit, the argument as persuasive to the issues in the

instant case.  Plaintiff therefore requests that the court grant him benefits or, in the

alternative, remand this case for a new hearing pursuant to Sentence Four.

### C.    Commissioner's Motion for Summary Judgment

According to the Commissioner, plaintiff's sole challenge to this Court is

that the ALJ erred by not hearing testimony from a vocational expert at the second

administrative hearing.  Plaintiff acknowledges that the Appeals Council order

instructed the ALJ to obtain supplemental evidence from a vocational expert only

"if warranted," but nevertheless maintains that he was prejudiced by not being able

to question the expert.  The Commissioner argues that substantial evidence

supports the ALJ's finding that plaintiff could perform a significant number of

jobs in the economy.  The Commissioner contends that the ALJ reasonably found

that despite plaintiff's physical impairments of congenital valvular heart disease

with aortic valve replacement and mitral valve repair, atrial fibrillation, and

chronic systolic heart failure, he had the residual functional capacity (RFC) to

perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a),

except that, due to his blood thinner therapy, he should avoid exposure to sharp (or

other) objects that may cut or cause injury.  (Tr. 14).  The ALJ determined that

plaintiff was not disabled because he could perform jobs such as social work and

customer service representative positions.  (Tr. 18).  The Commissioner contends

that the ALJ also explained that, under the framework of the Medical-Vocational Guidelines, considering plaintiff's age, education, and work experience in combination with his RFC, he was not disabled.

The Commissioner acknowledges that she bears the burden of proving that a claimant can perform a significant number of jobs at the fifth step of the sequential evaluation. The Commissioner may satisfy that burden by relying on testimony from a vocational expert, in response to a hypothetical question that includes the claimant's limitations supported by the medical evidence, that a claimant can perform a significant number of jobs. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments."). Additionally, an ALJ may rely on the Medical-Vocational Guidelines (the "Grids"), which take administrative notice of the number of unskilled jobs that exist in the national economy when taking into account a claimant's age, education, and work experience in combination with the claimant's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(b); *see Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983) (explaining use of medical-vocational guidelines). The Commissioner explains that when a claimant has only exertional limitations, or when his non-exertional limitations are insignificant, the grids are

8

dispositive of the issue of disability, and an ALJ may rely on the Grids to satisfy

the Commissioner's burden of establishing that there are a significant number of

jobs in the national economy that the claimant can perform.  20 C.F.R. Pt. 404,

Subpt. P, App. 2 § 200.00(b); *Heckler*, 461 U.S. at 461-62.  According to the

Commissioner, the ALJ in this case relied both on the testimony of a vocational

expert and the Grids to conclude that plaintiff could perform a significant number

of jobs and, thus, was not disabled.

The Commissioner argues first that the ALJ appropriately relied on

vocational expert testimony.  Plaintiff correctly asserts that the ALJ cited the

vocational expert's testimony from the first hearing and did not elicit testimony

from an expert at the second hearing.  The Commissioner asserts, however, that

the ALJ's RFC assessment in the second decision was virtually identical to the

RFC assessment in the first decision, and a hypothetical question containing those

limitations was presented to a vocational expert at the first hearing.  (Tr. 14, 60-

63, 98).  Thus, the Commissioner concludes, the ALJ did not need to question a

vocational expert at the second hearing.  Although plaintiff maintains that there

was "updated evidence" submitted into the record at the time of the second

hearing, the Commissioner contends that even so, the ALJ did not change the RFC

assessment based on that updated evidence.  According to the Commissioner, it is

significant that plaintiff does not assert, let alone develop, an argument

9

challenging the ALJ's evaluation of the updated evidence or the RFC assessment. "[Issues] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); *see Kennedy v. Comm'r of Soc. Sec.*, 87 Fed. Appx. 464, 466 (6th Cir. 2003). Thus, the Commissioner concludes, because the ALJ presented a hypothetical question with the restrictions in the RFC assessment to a vocational expert at the first hearing, he did not need to further question a new vocational expert at the second hearing. Rather, the ALJ appropriately relied on the testimony of the first vocational expert to conclude that plaintiff could perform a significant number of jobs in the economy. (Tr. 18). *See Smith*, 307 F.3d at 378.

The Commissioner further argues that the ALJ properly assessed plaintiff's vocational profile and applied the Grids to conclude that he was not disabled. Plaintiff was 50 years old on his alleged disability onset date and 53 years old at the time of the ALJ's decision and was classified as an individual closely approaching advanced age. (Tr. 17). Plaintiff had at least a high school education and had acquired work skills from his past relevant work. (Tr. 17). The Commissioner asserts that Rule 201.15 in the Grids directs that an individual with those characteristics and a residual functional capacity for sedentary work is "not disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. No. 1, Rule 201.15. The Commissioner asserts that plaintiff's only challenge to the ALJ's reliance on the

10

Grids is that he had non-exertional limitations that prevented application of the Grids. The Commissioner contends that apart from the bald assertion of non-exertional limitations, however, plaintiff has developed no argument that meaningfully contests the ALJ's reasoned conclusion that plaintiff's reported major depressive disorder did not cause more than minimal limitation in his ability to perform basic mental work activities and, thus, was non-severe (Tr. 12-14). Accordingly, the Commissioner concludes, plaintiff has waived that argument. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *accord Kennedy*, 87 Fed. Appx. at 466.

The Commissioner further notes, without waiving her claim of waiver, that even if plaintiff had not waived the argument about his mental impairments, it would fail. The ALJ emphasized that plaintiff did not begin psychiatric treatment until May 2013, shortly before the second hearing. (Tr. 12). The ALJ noted that plaintiff may have sought treatment, in part, to generate evidence for the appeal, particularly in light of his normal psychiatric evaluations throughout 2011. (Tr. 12, citing Tr. 306 ("no unusual anxiety or evidence of depression"), 310 (same), 317 (same), 321 (describing plaintiff as "alert" and "oriented")). The ALJ acknowledged that plaintiff had a flat affect and was disheveled during a May 2013 examination, but explained that the remainder of the mental status

11

examination was normal. (Tr. 12, 566-67). And just a week later, the ALJ continued, plaintiff was alert and oriented with intact memory, normal concentration, fair judgment, and normal stream of mental activity. (Tr. 12–13, 557–58). The Commissioner contends that the ALJ was entitled to discount plaintiff's complaints when, as here, his treatment notes did not corroborate his assertions. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994). The ALJ also relied on the August 2011 consultative examination report, which noted that plaintiff displayed logical, goal-directed, and organized stream of mental activity, was able to repeat six digits forwards and three backwards, and could perform simple calculations and serial sevens. (Tr. 13, 291). Moreover, plaintiff was administered the Wechsler Memory Scale test, and his performance did not evidence any significant cognitive impairments or limitations in the areas of working, general, or immediate memory. (Tr. 13, 292). Ultimately, the ALJ concluded that plaintiff had no impairments that would prevent him from doing work-related activities at a sustained pace. (Tr. 13, 292). And, plaintiff himself denied symptoms of depression, anxiety, or emotional stability that would prevent him from doing work-related activities and interacting appropriately in a social/work environment. (Tr. 13, 292). Accordingly, the Commissioner concludes, even if plaintiff had preserved an argument challenging the ALJ's analysis of his mental impairment, his argument would fail because substantial

evidence supports the ALJ's assessment.  According to the Commissioner, "[d]iscretion is vested in the ALJ to weigh all the evidence," and he did not abuse that discretion in this instance. *Collins v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 663, 668 (6th Cir.2009); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir.1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").  The Commissioner therefore requests that the Court affirm the Commissioner's decision.

### D.    Plaintiff's Reply Brief

In his reply brief, plaintiff relies on and reasserts the reasons set forth in his motion for summary judgment.

## III.   DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with

14

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

 If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

 The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc.*

*Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

16

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

17

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

18

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

## C.   Analysis and Conclusions

Plaintiff's sole argument is that the ALJ erred in failing to obtain additional vocational expert testimony at the hearing. However, as the plaintiff concedes, the Appeals Council ordered the ALJ to "[o]btain *if warranted by the expanded record*, supplemental evidence from a vocational expert[.]" (Tr. 109). A review of the ALJ's decision here reveals that he carefully considered the additional evidence and testimony presented at the second hearing, and determined plaintiff's RFC, which is identical to the RFC assessment in the first decision. (Tr. 14, 98). The ALJ obtained vocational expert testimony in response to a hypothetical question containing the limitations in plaintiff's RFC at the first hearing (Tr. 60-63), and relied on that same testimony in the second hearing. (Tr. 18).

19

While plaintiff is correct that no evidence was presented at the second hearing, by a vocational expert, regarding the type(s) of job(s), if any, he could perform and which existed in substantial numbers in the economy, he is incorrect in his contention that the ALJ was in error in relying on previous vocational expert testimony.  The Commissioner has the burden of establishing that plaintiff could perform jobs which are available in the national economy.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) ("To meet this burden, there must be a finding supported by substantial evidence that plaintiff has the vocational qualification to perform specific jobs.") (internal quotes and citations omitted).  However, an ALJ may properly rely upon evidence presented at a prior hearing in making his determination.  *See Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996) (finding "that the third ALJ's examination of the conflicting vocational expert testimony from the two prior hearings was appropriate"); *see also Naudain v. Apfel*, 119 F. Supp.2d 812, 818 (C.D. Ill. 2000) ("[A]n ALJ may properly rely upon evidence presented at a prior hearing in making his determination."); *Woolf v. Sullivan*, 1992 WL 533050, at *7 (E.D. Mo. Oct. 19, 1992) (finding that substantial evidence existed for the ALJ's conclusion based upon the vocational expert's testimony at a prior hearing).

Here, the vocational expert testified in response to a hypothetical posited by the ALJ at plaintiff's first hearing that a substantial number of jobs existed within

20

the national economy for an individual with plaintiff's RFC.  (Tr. 60-63).  A

careful review of the ALJ's decision reveals that the ALJ considered the additional

evidence and testimony presented at the second hearing, and that he determined

that plaintiff's RFC (as determined as the first hearing) did not change based on

that additional evidence.  (Tr. 14-17).  The ALJ thus did not err in relying on the

vocational expert's testimony from the prior hearing.  *See Paulson v. Astrue*, 368

Fed. Appx. 758, 760 (9th Cir. 2010) (holding that ALJ properly relied on the

vocational expert testimony from a prior hearing based on an essentially identical

RFC assessment).  As the Commissioner properly points out, plaintiff does not

assert, let alone develop, an argument challenging the ALJ's RFC assessment

based on the updated evidence.  Plaintiff only states that "there was evidence

submitted regarding [his] mental impairment of depression, which is a non-

exertional limitation," and that "[t]his evidence should have been considered and

presented to a vocational expert through hypothetical scenarios[.]"  (Dkt. 12, Pg

ID 630).  However, plaintiff cannot simply make bald claims that the ALJ erred,

while leaving it to the Court to scour the record to support this claim.  And,

"issues adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived.  It is not sufficient for a party to

mention a possible argument in a most skeletal way, leaving the court to ... put

flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)

21

(citation omitted); *see also Crocker v. Comm'r of Soc. Sec.*, 2010 WL 882831 at

*6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by

scouring the party's various submissions to piece together appropriate

arguments.") (citation omitted).  Plaintiff complains that he was prejudiced

because he was not allowed to examine a vocational expert in the second hearing.

However, it is undisputed that plaintiff did have an opportunity to, and in fact did,

question the vocational expert in the first hearing.  (Tr. 64).  In the view of the

undersigned, plaintiff's arguments are wholly insufficient and undeveloped.

Moreover, a review of the ALJ's decision reveals that he carefully

considered the additional evidence and testimony presented at the second hearing,

including evidence and testimony regarding plaintiff's mental impairments.  The

ALJ noted that plaintiff did not begin psychiatric treatment until May 2013,

shortly prior to his second hearing, and that despite complaints with concentration

and memory, mental status examination revealed him to be alert and oriented times

three, with intact memory, normal concentration, fair judgment, and normal stream

of mental activity.  (Tr. 12, citing Tr. 523-84).  The ALJ further noted that

plaintiff's daily activities did not support his claimed limitations, and a report from

a 2011 consultative examination also did not evidence any significant cognitive

impairments, with the examiner finding that nothing in the examination "would

prevent [plaintiff] from doing work-related activities at a sustained pace and

appropriately interacting in a social/work environment."  (Tr. 13, citing Tr. 289-94).  Plaintiff offers no basis whatsoever for the Court to conclude that the ALJ's decision is not supported by substantial evidence and offers no factual or legal basis for the Court to conclude that the ALJ committed reversible error.[1]

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

---

[1] The undersigned further finds that plaintiff's reliance on *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999) is inapposite.  In *Tackett*, the court found that the ALJ erred in failing to obtain vocational expert testimony at all, and instead relying only on the Grids, even though there was medical evidence that plaintiff suffered from non-exertional limitations.  *Id.* at 1102.  That is not the case here.  As explained *supra*, the ALJ here did obtain and rely on vocational expert testimony obtained in the first hearing, in response to an individual with the same restrictions as he found for plaintiff in the second hearing.

23

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 4, 2015                          s/Michael Hluchaniuk
                                                Michael Hluchaniuk
                                                United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>February 4, 2015</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<div style="margin-left:40%">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>